Thank you, Your Honor. Good morning. May it please the Court, my name is Stephanie Helm. I'm an attorney for the California Public Utilities Commission, or CPUC, speaking today on behalf of the petitioners. FERC impermissibly, collaterally attacks the regulatory authority of the California Commission by rejecting final CPUC decisions. Petitioners ask this Court to reaffirm its 2018 decision and hold that FERC errs in awarding California utilities an incentive for conduct that they are not free to change. Hold on, because one of your arguments is that, and it seems to be where you're leading off in your oral argument, is that we'd already cited this issue in the prior case, that they were there involuntarily. But if that's true, then why would we have remanded the case? If we had already decided this question, why would we have remanded the case for further consideration if we had actually reached this issue? Your Honor, I think the case was remanded because this Court found that FERC had not, in its earlier orders, given consideration to the California Party's argument that an adder could be rebutted, as was required in the 679 Orders. In the 2018 decision, this Court found that an incentive must incentivize something. Otherwise, it fails to meet the 679 Orders' test that the adder is only permissible when justified. The 679 Orders specifically allowed for the types of rebuttals that the California parties were making based on state law. Ultimately, we didn't reach the ultimate conclusion that the California law made this involuntary. And we remanded for that consideration. I'm just trying to get as a threshold matter. I don't buy the argument that we've already decided this question. We said if it's involuntary, then you can't impose the adder. If it's voluntary participation, then you can. And then we remanded it for them to determine that. Now, they've made a determination that this is involuntary. But I don't think our prior opinion controls that issue. I mean, I think we're dealing with, okay, did they get it right or did they not get it right? Sure, Your Honor. And I think that FERC absolutely did not get it right. FERC did not want to look beyond federal law, which contradicts what this Court directed them to do. And FERC also got state law wrong. FERC must apply state law to determine whether the adder incentivizes participation in a transmission organization. FERC erroneously asserts that the adder is, from FERC's perspective, solely a matter of federal law. State law is necessarily the subject of the case-by-case analysis required. I'm not sure how you make that argument. When you read the FERC decision, it talks a lot about state law. It goes through the state statutes. How do you reach the conclusion that that FERC decision only applies federal law? Because FERC does not apply state law as a state court would. FERC, first of all, completely disregards the California Commission's final and binding decisions that hold that transfers of operational control are just the sort of transfers that fit under the otherwise-disposed-of language in 851. FERC is not entitled to any deference in its interpretation of state law. The California Supreme Court— There were a couple of things I wanted to push back on there. Entitled to no deference, wouldn't they still be entitled to skid more deference on their interpretation of state law? Or is your position, no? No. I think it's ridiculous to assume that FERC is a dueling agency that has any authority to interpret what state law means. The agency that is responsible for administering this state statute is the California Public Utilities Commission. So therefore, we have to defer to the California Public Utilities Commission's interpretation of state law? What I'm asking primarily is for this court and for FERC to have deferred to the 1995 and 1998 restructuring orders. And in those orders, the California Commission necessarily considered the scope of 851 and under 1709 of the Public Utilities Code. Because those orders were not challenged in California court, they are final and they are binding. Okay. And that does seem to be your best argument, in my opinion. And the question there is, how are those orders to be interpreted? Because do you agree those orders only addressed whether an entity was required to join a CAISO, but it didn't address what the basis would be for transferring out of a CAISO. Is that correct? I disagree, Your Honor. I think the 1995 decision, as this court recounted in the 2018 decision, was a decision that required electrical restructuring. It required a scheme where the utilities own but don't operate their own transmission. It specifically said that the future transfer would be subject to 851. And the 1998 decision is the California Commission using its jurisdiction to determine that the utilities carry out this integral part of electrical restructuring. I think your argument would make sense if this issue was litigated in state court, and a California state court would have to take CPUC's 1988 decision as preclusive and binding. So what is it in California law that tells us that a California court would have to do that? Section 1709 of the Public Utilities Code. And the decisions that stem from People v. Western Airlines, including Anchor Lighting v. FBE or Hickey v. Robey, where an intermediate California court found, even if culpably erroneous, the determinations of an unchallenged final California Public Utilities Commission decision are binding. So what do we do with, like, I mean, there's a case in California, the Yamaha case from 1998, that says that when an agency is interpreting a law, that there's deference given, but it's not preclusive effect because courts figure out what the law means. So what do we do with that kind of authority that comes out of California as well? Sure, I think Yamaha is the least deferential standard applied to a general state agency, not a constitutionally based agency with the broad powers the California Commission has. However, even when Yamaha applies, there's a continuum of deference. In Yamaha, the facts that were before the California Supreme Court were just a staff member of an agency making an interpretation of what state law meant. Whereas here, when you look at the comparative advantage and the likelihood of being correct, the factors would lead one to defer to the interpretation the California Public Utilities Commission has made. These determinations were made with notice and comment. They were determinations made by the commissioners of the California Commission. The California Commission has the most familiarity with the regulations here and would be sensitive to the implications of its decisions. I guess I have one other follow-up on that. I mean, we agree, right, that the key language that needs to be interpreted is this, or otherwise dispose of, right? Sure. That phrase also exists in a federal statute that the Circuit Court of the District of Columbia has addressed and interpreted. And it seemed, I mean, I went back and looked, and the federal statute's older than the California statute with that same language. So is the California statute modeled off a federal statute with regard to the language we're talking about in this case? It is not, and I disagree that the California statute is newer than the federal statute. The California statute is based off its predecessor, Section 51A of the Public Utilities Act. And as the California Commission has cited, especially the 1995 decision in Redonda, recounts the California Commission's consistent application of 851 and its predecessor for almost 100 years. I also would note that even FERC has admitted, in its brief on page 45, that if this isn't preclusive, and we're just talking about the deference to give to the California Commission's interpretation, that the Supreme Court of California finds that consistent administrative constructions of a statute are entitled to great weight and will not be overturned unless fairly erroneous. FERC hasn't cited to any state authority which shows that the California Commission's interpretation is clearly erroneous. But that could be true without a state court announcing such. I mean, if an agency came to a decision that's flatly contrary to statutory language, then the standard is met whether the California Supreme Court has said so or not. Right, but the California Supreme Court gives a strong presumption to the validity of the California Commission's decisions. All right, I want to circle back to my question about the federal statute versus state statute. Something I haven't been able to nail down yet is this phrase, or otherwise dispose of, when did that show up in the California statute, that phrase? Your Honor, I am not particularly sure, but I believe that it existed in Section 51A of the Public Utilities Act. The predecessor to 851. All right, and when was that predecessor enacted? Well, the California Commission was originally the Railroad Commission established in the 1910s, so I think it would be sometime around then. I would also note that the California Commission, because it's a constitutionally based agency, so the California Supreme Court in cases like Greyhound and S.E. versus P.B. has explained that the California Commission has the power to do all things necessary and can fill out the details of a statutory scheme. It is not an agency that is limited to only the express powers in a statute. It is an agency whose limits on its ability are whether the commission's actions are cognate and germane to utility regulation and whether the commission is disregarding express legislative direction. Neither of those things are the case here. I have one other question. Both FERC and the intervenors say that the 1999 decision was not raised before FERC and is therefore administratively un-exhausted. Do you agree with that? No, we disagree with that. In the reply brief, we provided examples from the exertion record where we had brought the 1999 decision to the attention of FERC. What I think the 1999 decision goes to show is how the state and the federal commission have been acting concurrently and sharing jurisdiction after the utilities had transferred their transmission assets to the California independent system operator. In the 1999 decision, the Southern California Edison asked to sell some of the assets that were under the control of the CAISO. And FERC, in evaluating that, put its decision on hold and didn't authorize the transfer until the California commission had also authorized that transfer. Turning now to the remedy. It's the position of the petitioners that further proceedings at the federal commission would only further delay refunds and could provide FERC another opportunity to shift rationale and intransigently try justifying the adder. Therefore, the petitioners respectfully request that this court vacate the five adder awards now before the court and instruct FERC to order refunds of what we estimate to be about $150 million that has been collected from customers as a windfall to these utilities. Okay, so just to be clear, if we were to adopt your position that the legal interpretation by FERC was incorrect, I see, you're saying we shouldn't remand it back in that circumstance. We should just decide, if we were to decide the legal question differently, then we should just order that money to be refunded? Exactly. We've pointed out to the court in our opening brief the various settlement provisions that provide how those refunds would be... Is there a basis for that? I mean, does that happen automatically? If we were to invalidate a decision, normally we would... principles of administrative law would require us to remand it back for the agency to make that determination. What would be the basis for us as a court to just step in and say, we're vacating this, you can't... I guess if we said legally you just can't make this decision, then we would also have the authority to put in a retroactive remedy? Or why wouldn't we remand the remedy to FERC in the first instance? Sure, this is definitely an extraordinary remedy. But I think it's consistent with prior Ninth Circuit practice where the respondent has not or has failed to heed the direction of the appellate court. Under 313B of the Federal Power Act, this court has the ability to modify or set aside for quarters. And so we are asking, as the earliest rate case here has been affected since March 1st, 2015, there are customers that have been waiting over six years for refunds of this money. In Earth Island Institute v. Hobart, there's one example of when this circuit has provided for vacater. Another one is Sierra Club v. US... No, I don't disagree. I agree that we can order vacature, but I'm not entirely sure that vacature... that the remedy specifically that you're requesting specifically would follow for vacature. That's what I'm... That's what I'm asking about. Sure, Your Honor. But here we think that the record is fully developed and that further administrative proceedings at FERC would serve no purpose. If I could, I'd like to reserve the last three minutes for rebuttal. Thank you. Mr. Viswanathan, and I apologize if I've butchered that. You did great, Judge Nelson. Good morning, Your Honors. Anand Viswanathan on behalf of the Federal Energy Regulatory Commission. There's been a number of questions about the deferential standard of review. I want to turn to that and untangle that a bit. But before I do, there was a discreet question from Judge Nelson about the deferential standard of review. The 1999 order, to your question, yes, it is. That order is statutorily barred because it was not raised before the commission. What we said in our response brief is that the new argument in the California Commission's opening brief was that the 1999 order was binding as a matter of California state law under Section 1709 of the Public Utilities Code. That argument was not raised before the commission. The argument on 1709 that was raised before the commission related to the 1995 and 1998 orders. It was not about the 1999 order. And so what counsel was referring to in the rehearing briefs was a general citation to the 1999 order with other orders as representing the California agency's position. So that argument is statutorily barred. As far as the standard of review, I want to separate out the issue of Yamaha and the extent of any deference to a state agency's interpretation of the statute versus whether an agency interpretation is entitled to preclusive effect under 1709. What the commission found here is that because the 1998 order did not actually, it did not address the dispute or hold that withdrawal was subject to the California Commission's review under Section 851 of the Public Utilities Code, that would not have preclusive effect here. As the commission pointed out, that order was actually about a different issue. It was about a proposed transfer of assets to the system operator. There's a single sentence of dicta in that order that references withdrawal. There's no reference to that sentence in the conclusions of law or ordering paragraphs. The case law that the California Commission cited on 1709 applies principles of res judicata and issue preclusion when deciding whether to grant preclusive effect to a particular agency finding. The state courts would not grant preclusive effect to a statement of dicta in an agency. Let me ask you just more fundamentally, you said you were going to talk about, and I guess you are talking about the standard of review, but I think if this is arbitrary and capricious review, it seems pretty clear that, at least to me, that FERC satisfied its obligation. But ultimately, doesn't this boil down to a legal question along the lines that you're already arguing? And if it boils down to a legal question, doesn't that make this de novo review? Don't we review de novo whether FERC properly interpreted the law? Or are you entitled to it? Do we review it for arbitrary and capriciousness, or do we at least accord it skid more deference? I'd be interested in your views on that. So I think you're correct that at least with respect to the interpretation of state law that FERC engaged in, I think that would be de novo review. The orders in their entirety would be subject to arbitrary and capricious review as any agency orders under the APA. But this court has said on several occasions that when the appellate court looks at a district court's interpretation of state law, that's de novo review. So presumably it would be the same standard when it comes to a federal agency's interpretation of state law. Having said that- What's the legal authority that you rely on to say it would be de novo review when a federal agency is interpreting state law? Well, so I believe it would be consistent with what this court has said when it comes to its review of district court interpretations of state law. But having said that, Judge Hunsaker, I mean, the commission addressed the issue of state law because it was raised to the commission to rebut the presumption of eligibility for the rate incentive under federal law, which is a federal question, which would be governed by the arbitrary and capricious standard. So all of this sort of melds together in that sense. I think the other standard of question relates to the California Commission's view that states are entitled to some healthy degree of deference. What we point out in our response brief is that the opening brief essentially mixed and matched several different standards of review under California law. There is a real difference between what's known as greyhound deference versus Yamaha deference. And when we pointed that out in our response brief, the reply brief did not attempt to, again, argue that greyhound deference would apply. And that's the standard that essentially a court would affirm the agency's interpretation as long as it bears some reasonable relation to the statute. So it seems like they've implicitly conceded that point. But you would suggest that they're at least entitled to some deference in their interpretation of state law. No, no, Judge Nelson. Yamaha says that they're not entitled to any deference at all. What Yamaha says is really it depends on the circumstance. It depends on the contextual merit of what the agency has offered. And so in some instances, state courts defer to agency interpretations of law. In other instances, they have declined to do so, even when they have referenced standards such as affording great weight to agency interpretations and the like. What the courts have consistently found is that ultimately assessing the language of a statute is the responsibility of courts. And the state courts, importantly, have adopted Skidmore. And so they consider factors such as the thoroughness of the agency's consideration, whether it is persuasive, whether it is probably correct. And here it is unlikely that a state court would defer to a single conclusory sentence of dictum in the 1998 order. Now, I know that there's been a reference to the 1995 order. But not to complicate this, but it is a complicated issue. We're reviewing the interpretation of the 1998 order de novo, right? Because the implications of that 1998 order is a legal question. So don't we have to review the implications of that order de novo? Yes, I think that's right. And I think that as we interpret it de novo, do we give deference to anyone? I mean, we have FERC saying, hey, here's what we think California state law says. We have the California Public Utilities Commission saying, here's what we think California state law says. Do we give either party, do we just give you both the same deference? Or do we just say, look, we're just going to decide this on our own looking at state law? I think you would have to do it the way the state courts would, which is that they would look at the interpretation that's been offered and assess its contextual merit. And what the commission has tried to emphasize is that because the only support for the California Commission's interpretation of Section 851 is in that one sentence in an order where there's no reasoning attached to the sentence, and it's not about that issue, that's not an interpretation that the state courts would grant any sort of deference to under Skidmore. And so this court should likewise not offer any deference to the California Commission. I'm not advocating for this. And I don't think either party has asked us to do it. But if we were dealing with a question of state law like this, I mean, it's very hard to find guideposts from the state courts on this question, in my opinion. We would normally consider certifying a question at the California Supreme Court. I've actually never seen that happen in a regulatory context like this. So number one is, do we even have authority to certify the question of the California Supreme Court? Number two is, is that something we should even consider? So I think the answer to the first question is I think it's still a matter of the court's discretion. I'm not aware of it being a different answer for certification purposes because it's a regulatory context. I would say the answer to the second question is no, you should not. What this court has consistently said, and I think you said it a couple of months ago, is that federal courts routinely and regularly decide issues of state law without certification. Well, but that's usually where we have something, at least a court of appeals decision that can help us out here. I mean, this is a pretty bleak record of kind of guideposts as to what the state courts, you know, how they would interpret this. And part of the reason for that, I think, is it's a unique set of facts. And I think this kind of goes to some of the orders that petitioners counsel referenced, because at least with respect to the kind of transaction that's at issue, it's not a normal sort of proprietary exchange or exchange of proprietary rights like a sale or a merger. It is a transfer of purely operational control. And so I think that's why you don't have any case law other than that D.C. Circuit decision that attempts to construe a similarly worded statute. And let me just throw on another complicated layer, because ultimately this isn't a question of state law, at least in Perk's opinion. This is ultimately a question of federal law. But under federal law, you can have a, it's not clear to me exactly the context, you know, state law can provide a rebuttable presumption of whether federal law applies. I don't know. I guess if we need the determination that the California Public Utility Commission's interpretation of California law were correct, would that decide the federal law question as well? Or would there be another layer of analysis that goes into that? Well, I think what this court's remand opinion said is that one way in which a party can rebut the presumption of eligibility is showing that state law prohibits the utility from leaving the system operator. And so, I mean, I think that the dispute sort of does come down to whether California or FERC got that issue of state law right. That is, does Section 851 of the Public Utilities Code give the California Commission authority to review a transfer of purely operational control? And what we've tried to argue is that, I mean, notwithstanding your questions on certification, it's not the sort of issue that presents important public policy ramifications. It's not an issue of broad application that would merit certification because it really probably only affects the handful of utilities that are part of that transfer order. Yeah, okay, so I agree with you factually that the 1998 order, and I guess the 1995 order, that they're both factually distinguishable. But the underlying legal principle does seem to support what the California Public Utility Commission is arguing here, which is that when you have a transfer of operational control, that that is not a voluntary action. And so, I mean, why wouldn't we presume to follow the underlying legal theory as opposed to cabinet within the specific confines of the order itself? Because I think that with respect to the 1998 order, it itself cabined what the California Commission was talking about. And at least, I mean, this goes to, I think, both the issue of whether it could be binding in a future case and the issue of deference. In terms of whether it's binding, it would not be binding because the issue of, like the broader issue of transfer, like a withdrawal, that issue was not actually litigated and necessarily decided in that order. It was not the subject of that order. What was the subject of the order is, as the agency in that order repeatedly said, it was the proposed transfer. So we do have to look at it in terms of how the agency itself framed the issue. And you can also look at the agency's conclusions of law on that point. As far as deference, I think that there's a difference between assessing an agency's interpretation of a statute and whether it gets deference versus what is the most reasonable reading of the otherwise disposed of language. What the Commission, what FERC has argued is that it's not a good reading of the language of 851 to treat otherwise disposed of as encompassing a broader set of transactions than the preceding terms. And counsel, just to follow up on my question to Ms. Holm, I mean, do you have any information about whether there was borrowing between the federal government and state government with regard to that statutory language? I mean, it raises at least that question because it's the exact same phrase in the two statutes. And Judge Hunsaker, I think, was your question about the date of the statute? I'm just trying to figure out if there was a borrowing between whether California is borrowing a federal provision or vice versa. I don't know the answer to that, Judge Hunsaker. That issue was not raised before the Commission, so I don't have a record for you on that point. What I can tell you is that the D.C. Circuit's interpretation of that statute is consistent with how California courts have reviewed similar statutory language in the sense of using the canons of construction that the Commission used here. And the alternative view that's been presented by the California Commission does not actually attempt to parse the language of the statute. If you look at the 1998 order, it just represents a conclusion without any attempt to address that language. Can I ask one? There was some suggestion, I think California Public Utility Commission referenced a proposed rule that would seemingly turn the incentive adder into kind of a general adder. Can you tell, is that accurate? Is there a proposed rule out there? What's the status? And if it were adopted, would that potentially moot this out or it wouldn't moot it out because it wouldn't have retroactive effect? This is a very current question, Judge Nelson. The proposed rulemaking you're talking about is from last year. Yesterday, the Commission issued a supplemental notice of proposed rulemaking where they slightly altered how the questions were presented on this point from last year's notice. And what the Commission proposed is potentially limiting the ability to invoke that incentive to three years. So once you're past your third year in a system operative, you no longer qualify for the incentive. And then as far as volunteering, we don't have an answer on that. I think it just depends on what the Commission says in a final rule. And obviously, we don't know when that final rule would issue. As far as it having any implications for the case here, I would say no. The notice is all issued after the order is on review. And obviously, there hasn't been a change in policy until the Commission actually issues a new rule. It looks like I'm cutting into my intervener's time. So unless there are further questions from the panel, I'll stop here. Okay, thank you. And Mr. Dwyer, we'll give you two minutes. Thank you, Your Honor. Your Honor, may it please the Court. My name is Matthew Dwyer. I'm appearing on behalf of Southern California Edison Company. I just want to go back to where I think some of the focus of today's discussion has been, which is that single line within the 1998 Public Utilities Commission decision that notes the transfer of operational control of transmission facilities from the California system operator and back to the utility reportedly requires CPUs to review. And today, the California person asserted that line is not dicta, but rather binding on the California precedent as final and unappealable under Section 1709. But I just wanted to highlight that as addressed in the intervener's brief, and unrefuted in the California's reply brief, the California Supreme Court has applied 1709 and held that decisions of the CPUC are final and inclusive only as to the issues involved. And Public Utilities Code Section 1705 provides that CPUC decisions shall contain separately stated findings of fact and conclusions of law by the Commission on all issues material to the order of decision. I just want to be clear. So your argument is, let's say that they issued an order. I understand the order can only bind the parties before it, but the Public Utilities Commission is not bound by subsequent, in subsequent orders, they're not bound by legal precedents that they laid down. They could just decide it completely differently in a subsequent case, in a subsequent order. So I'm speaking to what establishes the precedent in the Commission order. And so I'm speaking to the Commission. I understand. But I mean, I'm not so hung up on whether that statement is fictive or not. I'm kind of looking at that argument is that there's a legal basis for the Public Utilities Commission reaching that conclusion. Wouldn't they be bound to follow kind of the same analysis in a future case? And if you do, why would that lead to a different result? Other than what the California Public Utilities Commission is arguing here, that withdrawals are treated the same as any other transfer. I think a California court reviewing this decision would look to the California Public Utilities Commission's conclusions of law and the basis upon which it established that transferred operational control to the California system operator fell within the scope of Section 851. And that basis was otherwise dispose of property. And that's consistent with the language of Section 851, which speaks to when a utility is encumbering or disposing of property. A utility's decision, if the California system operator relinquishes control under the federal jurisdictional transmission control agreement, under that agreement, the California system operator is empowered with certain rights and obligations with regard to operational control of facilities. And if it exercises its right under those facilities to transfer operational control back to a utility, that's not the utility disposing of an asset, it's acquiring control of an asset. It's just simply beyond the scope of Section 851. Okay. Thank you, counsel, unless there's further questions. No, thank you, Your Honor. We have your position. Thank you, Mr. Dwyer. And Ms. Holm, you have your rebuttal. Thank you, Your Honor. First, I would like to be clear. This discussion that the 1998 order contained merely dicta does not appear in the firm orders under review. This is a new post hoc argument. The utilities raised this in their briefs, but that is not the reason why the Federal Commission is interpreting state law as it does. I would also like to further defend the 1998 decision. It is inaccurate to say that it didn't necessarily decide the scope of 851. In fact, the very question these utilities applied to the California Commission for was to be exempt from 851 applying to them. And therefore, the California Commission necessarily had to decide what the scope of 851 was. You'll see in the excerpts of record, for example, on 255, the petitioners listed out various findings of fact, conclusions of law, and the ordering paragraph that make 851 subject be necessarily said that a transfer of operational control falls within the scope of the otherwise disposed of language in 851. I'd also like to turn to the questioning about certification. I would ask this court to look at SCE v. Peavey, a California Supreme Court case from 2003, where the Ninth Circuit certified a question about AB 1890 to the California Supreme Court. And there, the court employed the Greyhound standard of deference and found that the California Supreme Court was unable to reach a different interpretation of the public utilities code than the California Public Utilities Commission. I would say, though, that the California Supreme Court would only accept a question of certification where there isn't controlling precedent. And I think here, there is controlling precedent because the decisions of the California Commission are final and binding. If Fruch's position was upheld here, I mean, it would fundamentally attack the authority of the California Commission to enforce its electrical restructuring order. There would be a question where under federal law, could the California Commission exercise its authority under 851? There's been nothing in California law that questions the California Commission's authority to exercise those powers. Thank you. Yeah, thank you, counsel. Thank all counsel for their very helpful arguments today in a difficult case. And the case is now submitted. And that concludes the arguments for today. So the Ninth Circuit is in recess. Thank you. Thank you. This court for this session stands adjourned.
judges: Jack, Nelson, Hunsaker